IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JEFFREY HOWES,** *et al.* | * | |
| | * | |
| **v.** | * | **Civil Action No. CCB-20-670** |
| | * | |
| **SN SERVICING CORP.,** *et al.* | * | |
| | * | |
| | ***** | |

### MEMORANDUM

This action concerns the allegedly improper servicing of a mortgage on the plaintiffs' residence. The plaintiffs, Jeffrey and Tonya Howes, raise thirteen causes of action against eight defendants who at various times between 2001 and the present either held or serviced their mortgage. These defendants include three groups: (1) Wells Fargo Bank, N.A. and U.S. Bank, N.A., as Trustee for WFASC 2003[1] (the "2003 Trust") (collectively, the "WF" defendants); (2) SN Servicing Corporation ("SN Servicing") and U.S. Bank Trust, N.A., as Trustee of PRP II PALS Investments Trust ("PRP") (collectively, the "SN" defendants); and (3) American Mortgage Investment Partners Management, LLC ("AMIP"), FCI Lender Services, Inc. ("FCI"), Wilmington Savings Fund, FSB, as Trustee of Residential Credit Opportunities Trust V-B ("RCO"), and Samuel I. White P.C. ("White") (collectively, the "AMIP" defendants). Before the court are motions to dismiss filed by the WF defendants (ECF 20) and the SN defendants (ECF 21) as well as the AMIP defendants' motion for a more definite statement (ECF 22). The matter has been fully briefed and oral argument was heard on January 29, 2021. For the reasons discussed

---

[1] The 2003 Trust contends it was not properly served and seeks dismissal from this action under Fed. R. Civ. P. 12(b)(5). The Howes request that they be allowed to serve a new summons on the 2003 Trust. Because the court will dismiss the claims against the 2003 Trust in their entirety, this request is denied as moot.

1

herein, the WF defendants' motion will be granted, the SN defendants' motion will be granted in part and denied in part, and the AMIP defendants' motion will be granted.

## BACKGROUND

What follows in this section is a brief overview of a complex series of events related to this action.[2] The facts alleged in this suit extend twenty years, back to 2001, when Jeffrey and Tonya Howes executed a construction loan, secured by a mortgage on their residence, in the amount of $696,130. (ECF 8, First Am. Compl. ("FAC") ¶ 21). The loan agreement allowed the lender to assess late fees, attorneys' fees, and other costs. (*See id.*, Ex. A, Construction Note at 146). In 2003, when construction was complete, the loan was modified and converted to a regular residential mortgage note, and the Howes paid an additional $46,130 to reduce the principal balance to $650,000. (*Id.* ¶ 22). The plaintiffs made timely payments on the mortgage for several years. (*Id.* ¶¶ 25–26). Then the Great Recession struck; the Howes made several untimely payments on their loan and sought a modification under the Treasury Department's Home Affordable Modification Program. (*Id.* ¶¶ 28–29). Both before and after the Howes defaulted, the mortgage and the responsibility to service it were transferred numerous times among the various defendants named in this action: it was held and serviced by the WF defendants until 2013, (*id.* ¶¶ 65–68), by the SN defendants until 2018, (*id.* ¶ 146), and thereafter by the AMIP defendants. The plaintiffs contend that the various noteholders and servicers have, over the years, imposed

---

[2] This brevity is because the complaint—which, as explained in more detail in Section VIII, *infra*, raises thirteen causes of action against eight defendants over 135 pages—is generally too convoluted and confusing to yield an accurate summary. The court will address any additional relevant facts in the discussion section in order to properly place such facts within the context of the claims to which they pertain. It is hoped this manner of presentation will best enable the reader to comprehend the basis for the court's decisions.

excessive legal and late fees, refused to accept or properly apply timely payments, refused to respond to Qualified Written Requests, and filed improper foreclosure actions, among other things.

The Howes raised these grievances by filing suit on August 19, 2019, in the Circuit Court for Howard County, Maryland.[3] (ECF 1, Notice of Removal). The defendants removed the case to this court on March 12, 2020, on the basis of federal question jurisdiction and diversity jurisdiction. (*Id.*). On July 23, 2020, the defendants moved to dismiss the claims against them and for a more definite statement. The matter has been fully briefed, oral argument has been heard, and the matter is now ripe for resolution.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). When a complaint does not comply with these requirements, the court may strike any portions that are redundant or immaterial. Fed. R. Civ. P. 12(f). Lengthy pleadings offering confusing factual narratives and conclusory statements of law place an unjustified burden on the court and any party who must respond. *North Carolina v. McGuirt*, 114 F. App'x 555, 558–59 (4th Cir. 2004).[4] A court therefore may, in its discretion, dismiss a complaint if it is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see*

---

[3] This is not the first time the Howes have sought redress from the courts. They also have been involved in Chapter 13 bankruptcy proceedings relating to their mortgage, the outcome of which they appealed to Judge Hollander of this District and then to the Fourth Circuit, which affirmed in part and remanded for reconsideration of the amount owed on the Howes's note. *See Howes v. Wells Fargo Bank, N.A.*, No ELH-14-2814, 2015 WL 5836924 (D. Md. Sept. 30, 2015), aff'd in part and remanded in part, 676 F. App'x 207 (4th Cir. 2017).

[4] Unpublished opinions are cited for the soundness of their reasoning and not for their precedential value.

*also McGuirt*, 114 F. App'x at 559. Additionally, under Rule 12(e), a party may move for a more definite statement of a complaint which is "so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion is typically "designed to strike at unintelligibility rather than simple want of detail." *Gladney v. Am. Western Home Ins. Co.*, No. ELH-15-1559, 2015 WL 5009088, at *5 (D. Md. Aug. 20, 2015) (internal quotation omitted).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

The Howes's amended complaint contains thirteen counts, which for clarity of analysis may be condensed into the following seven claims:

1. Declaratory Judgment against all defendants (Counts I, II, and III)

4

2. Violations of Maryland's Credit Grantor Closed End Credit Provisions against all defendants (excluding White) (Counts IV and V)
3. Breach of Contract against AMIP, PRP, and RCO (Count VI)
4. Violations of Maryland's Consumer Protection Act against the SN defendants (Count VII)
5. Violations of Maryland's Mortgage Fraud Protection Act against the SN defendants and the AMIP defendants (excluding White) (Counts VIII and IX)
6. Violations of Maryland's Consumer Debt Collection Act against the SN defendants and the AMIP defendants (Counts X and XI)
7. Violations of the Real Estate Settlement Procedures Act against SN Servicing and FCI (Counts XII and XIII)

The WF and SN defendants challenge the complaint both on the grounds that it fails to conform to the federal pleading requirements of Rule 8(a) and on the grounds that it fails to state a claim for relief. The AMIP defendants challenge the complaint exclusively on the grounds that it fails to conform to the federal pleading requirements of Rule 8(a). Where the complaint is sufficiently clear, the court will reach the merits of the Howes's claims; where it is not, the court will consider what appropriate relief, if any, to order.

## I.    Declaratory Judgment

In Count I, the Howes seek a declaratory judgment pursuant to Maryland's Uniform Declaratory Judgments Act defining the rights of the defendants to foreclose on the note and specifying the amount owed, if any, by the Howes on the loan agreement.[5] Federal courts sitting in diversity, as this one is, apply federal procedural law and state substantive law; this court therefore must treat a state court declaratory action removed to federal court as invoking the Federal Declaratory Judgment Act. *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013).

---

[5] Counts II and III appear to seek a declaratory judgment affirming only that the defendants violated Maryland's Closed End Credit provisions. The court addresses those counts in Section II, *infra*.

The Federal Declaratory Judgment Act provides federal district courts power "[i]n a case of actual controversy" to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not relief is or could be sought." 28 U.S.C. § 2201(a). "This power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). A declaratory judgment action is appropriate when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). One of the purposes of the act is to allow a party in an uncertain position to "gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

The Howes contend that a declaratory judgment clarifying whether any debt buyers can enforce the note against them is proper in light of a pending foreclosure action. They further argue that it would be inefficient to dismiss the claims against all these defendants while litigating issues regarding their actions, because any judgment in favor of the Howes in this action would provide the debt buyers with claims against these defendants. But in 2013 Wells Fargo and the 2003 Trust transferred the note and the rights to service it, and in 2018 SN Servicing and PRP did the same. (FAC ¶¶ 65–68, 146). These defendants do not assert a right to enforce any note or other financial interest against the Howes, they are powerless to offer the Howes an adjustment or offset to any fees or other required payments under the loan agreement, and they are not seeking to foreclose on the Howes's residence. (*See* FAC ¶ 153 (describing RCO and AMIP as the foreclosing parties)). They therefore have no present interest in this dispute. Accordingly, the Howes have not pled that a sufficient controversy actually exists with respect to these defendants, and the declaratory judgment claim against them will be dismissed.

The AMIP defendants, though they style their motion as one only for a more definite statement, do raise some challenges to the Howes's complaint on the merits. They argue that the Howes's claim to declaratory relief is untimely given that the allegedly wrongful conduct has already occurred. (ECF 22-1 at 13). In support of this position, they cite *The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008), and conclude that if the conduct in question has already occurred or damages have already accrued, then a declaratory judgment is untimely. But that case did not announce such a broad holding as the AMIP defendants contend. Rather, it concerned a purported breach of contract that resulted in a race to the courthouse, where the defendant had filed a breach of contract action in one district before the plaintiff had filed the declaratory judgment action in another. *Id.* at 615. On those facts, the court was unwilling to entertain a declaratory judgment action "for the purpose of trying issues involved in cases already pending" and where the guidance the court might offer could not plausibly steer either party's conduct away from accruing further monetary damages as a result of a breach. *Id.*

In this case, the plaintiffs contend that (1) they are facing a foreclosure action from AMIP and RCO, who they state are not valid noteholders, and (2) the sum required to avoid foreclosure is uncertain and disputed. (FAC ¶¶ 153, 202, 205). They have therefore plausibly alleged an actual case or controversy, and it is not possible for the court to conclude that all the damages in this action have already accrued. While there is a parallel foreclosure case pending against the Howes, that case has been stayed pending resolution of this case. (*Id.* ¶ 169). Accordingly, the court will not dismiss the Howes's declaratory judgment claim against the AMIP defendants.

## II.     Closed End Credit Claims

The Howes also seek a declaratory judgment and various other relief for the defendants' purported violations of Maryland's Credit Grantor Closed End Credit ("CLEC") provisions. CLEC

governs transactions involving closed end credit, authorizing lenders to levy certain charges and fees and providing certain protections to consumer borrowers. *See Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 89–90 (2014). Specifically, the statute sets caps on interest rates but provides that a lender may charge and collect reasonable attorney's fees incurred in collecting from a borrower on default as well as late fees assessed on untimely payments—so long as the loan agreement so provides. *See* Md. Ann. Code, Com. Law §§ 12-1003, 12-1005, 12-1008, 12-1011. CLEC provides that a credit grantor who violates its provisions "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan," while a credit grantor "who knowingly violates any provision" of CLEC "shall forfeit to the borrower three times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle." *See id*. § 12-1018(a)(2), (b). A credit grantor is defined in the statute as a party "having a joint or common interest, or any other legal or commercial entity making a loan or other extension of credit" under CLEC's provisions. *See id*. § 12-1001(g)(1).

A.     *The WF Defendants*

The Howes have failed to state a plausible claim under CLEC against the WF defendants.[6] They claim that the WF defendants violated CLEC in 2009 by failing to accept the Howes's payments, by charging late fees when they failed to make timely payments, and by applying partial payments to costs and fees rather than to principal. But nothing in the complaint states that the loan agreement did not provide for the collection of late fees, attorneys' fees, or other costs. Rather, the loan agreement, which is attached as an exhibit to the complaint, provides that the Howes would be subject to a host of charges in connection with the loan, including late charges for

---

[6] The WF defendants also contend that the Howes's CLEC claim fails because the Howes lack standing to assert a violation against them and because the claim is barred by the statute of limitations. The court does not reach these arguments.

overdue payments and reasonable attorneys' fees. (*See* FAC, Ex. A, Construction Note at 146).

The gravamen of the Howes's claim against the WF defendants is not that they imposed fees under

a contract that did not provide for fees, but that the partial payments made by the Howes should

have, pursuant to the terms of the contract, been accepted or applied in a different manner. The

claim sounds in breach of contract and does not plausibly state a claim to relief under Maryland's

CLEC statute. Further, treble damages would not be appropriate given that the FAC appears not

to allege a knowing violation of CLEC's provisions. Accordingly, the court will dismiss the CLEC

claim against the WF defendants.

###### B.    *The SN Defendants*

SN Servicing argues that as a mortgage servicer, CLEC's provisions regulating credit

grantors do not apply to its conduct. Indeed, nothing in the complaint plausibly suggests that SN

Servicing is a credit grantor. The Howes allege in a conclusory statement that SN Servicing is a

"credit grantor" within the meaning of CLEC. (FAC ¶ 390). They also allege that when they wrote

to SN Servicing to request documents supporting the right to collect on their debt, Mr. Fogleman,

a representative of SN Servicing, told the Howes that the rights to their mortgage was acquired by

an "Assignment of Mortgage." (*Id*. ¶ 136). However, it is not clear from this allegation to whom

Mr. Fogleman suggests the mortgage was assigned—to SN Servicing, to PRP, or to another entity.[7]

And given that the complaint frequently refers to SN Servicing as a mortgage servicer acting as an

agent of PRP, (*see id.* ¶¶ 9, 417), the Howes have not plausibly alleged that SN Servicing ever

made or acquired a loan or other extension of credit under CLEC. Because the Howes do not

---

[7] This allegation cites to Exhibit MM, described as a "Response from SN, 1/22/2018" and
presumably a letter from Mr. Fogleman. But the exhibit does not appear to be attached to the
complaint.

plausibly allege SN Servicing is a credit grantor, their CLEC claims against SN Servicing must fail.

For its part, PRP argues that the complaint is devoid of specific factual allegations demonstrating that it violated CLEC. Only one of the paragraphs in the relevant count in the complaint explicitly references PRP, alleging in general and conclusory terms that both SN Servicing and PRP violated CLEC by assessing improper late fees and attorneys' fees not allowable under the terms of the loan. (*See* FAC ¶ 392). Of course, because each count incorporates all previous paragraphs of the complaint, it is possible there are allegations in the previous 387 paragraphs (spanning 118 pages) which could implicate PRP directly. (*See id.* ¶¶ 388, 392). Of those 387 paragraphs, the Howes point to just five as being relevant to PRP. (*See* ECF 26, Opp'n at 5). Yet none of those five actually name PRP specifically; instead, they refer to SN Servicing's conduct or contain statements of legal rules with no accompanying factual allegations. (*See* FAC ¶¶ 338, 352, 353, 357, 367). The conclusory allegations that PRP violated CLEC are insufficient to state a claim for relief.

### III. Breach of Contract Claims

In Count VI, the Howes also assert a breach of contract claim against PRP, AMIP, and RCO. To state a claim for breach of contract under Maryland law, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation. *RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010).

The Howes specifically contend that PRP breached the terms of their mortgage by, among other things, levying unreasonable attorneys' fees, failing to accept payments, and failing to timely apply payments. (*See* FAC ¶ 402). PRP argues that nothing in Count VI of the complaint, which contains the breach of contract claim, states with any specificity what actions PRP took to breach

10

the contract. In response, the plaintiffs say that such information "can be easily found" in paragraphs 113–141 and 350–367 of their complaint. (ECF 26, Opp'n at 6). Those paragraphs, however, concern the conduct only of SN Servicing, and not PRP. Accordingly, the plaintiffs have failed to sufficiently identify the factual basis that would make out a plausible breach of contract claim against PRP.[8]

## IV.   Consumer Protection Claims

In Count VII, the Howes assert a claim against the SN defendants for violations of Maryland's Consumer Protection Act ("MCPA"). The MCPA prohibits certain unfair, abusive, or deceptive trade practices in connection with the extension of consumer credit or the collection of consumer debts. Md. Code Ann., Com. Law § 13-303(4), (5). To state a claim under the MCPA a plaintiff must plead that "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018) (appeal filed) (internal quotation marks omitted). The MCPA's mortgage servicing provision requires that a servicer "shall designate a contact to whom mortgagors may direct complaints and inquiries" and that such contact "shall respond in writing to each written complaint or inquiry within 15 days if requested." Md. Code Ann., Com. Law § 13-316(c)(1), (2).

Because an MCPA claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standard. *See Barr*, 300 F. Supp. 3d at 416. Under Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Generally, this requires alleging the who, what, when, where, and how of an alleged fraud. *U.S. ex rel. Ahumada*

---

[8] Though SN Servicing was allegedly acting as PRP's agent, the complaint does not plead vicarious liability.

*v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014). What is required to plead fraud by omission is "a baseline level of particularity" that rises above "conclusory allegations of fraud[.]" *Anne Arundel Cty. v. Xerox State & Local Solutions, Inc.*, No. JFM-16-00563, 2016 WL 5720705, at *9 (D. Md. Sept. 30, 2016) (holding a complaint which simply alleged a failure to disclose "certain material facts" lacked the specificity required to satisfy even a relaxed Rule 9(b) standard). The Fourth Circuit has cautioned, however, that a court should hesitate to dismiss complaints under Rule 9(b) if it is satisfied "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

In this case, the plaintiffs allege, at most, that on August 20, 2017, they sent SN Servicing a request seeking clarification of how various funds were applied to their mortgage, that SN Servicing did not respond, and that this was done with the purpose of stonewalling the Howes. (*See* FAC ¶¶ 129, 143, 414(G)). Aside from these conclusory allegations, no facts are pled that would support the inference that SN's failure to respond was purposeful or fraudulent. The Howes's allegations, without more, do not rise above "conclusory allegations of fraud" to reach a "baseline level of particularity." *Anne Arundel Cty. v. Xerox State & Local Solutions, Inc.*, 2016 WL 5720705, at *9. Accordingly, the court will dismiss the Howes's MCPA claim against the SN defendants.

## V.     Mortgage Fraud Claims

In Count VIII, the Howes also allege that the SN defendants violated Maryland's Mortgage Fraud Protection Act ("MFPA"). The MFPA prohibits mortgage fraud, which involves any of six enumerated acts, including making misrepresentations or omissions during the mortgage lending

process or receiving proceeds that resulted from making such misrepresentations or omissions. Md. Code Ann., Real Prop. §§ 7-401(d), 7-402. The "mortgage lending process" is defined as the process "by which a person seeks or obtains a mortgage loan." *Id*. § 7-401(e)(1). Claims under the MFPA must be pled with particularity, since, as explained previously, they sound in fraud.

The complaint, far from a model of clarity, at times suggests vaguely that "someone" fabricated or "forged" documents used to transfer the Howes's mortgage between various noteholders. (*See, e.g.*, FAC ¶ 220). The SN defendants' principal objection to this claim is that the specific factual allegations contained in Count VIII do not contain the factual predicates for a mortgage fraud claim. The Howes attempt to remedy this defect in their opposition, citing to several paragraphs in the complaint—but outside of Count VIII—where they allege that there were forgeries in their loan documents. Yet even these allegations are insufficient to plead fraud with particularity. The complaint states that "someone" fabricated portions of their note, that SN Servicing and PRP later "found" the original note, but that it was significantly altered, and that it "must be determined whether the alterations were made with proper authority." (FAC ¶¶ 221– 225). None of these allegations suggests that either SN Servicing or PRP was responsible for or profited from any forgeries. As to the allegations in Count VIII itself, they state only in general terms that SN and PRP knowingly made misstatements regarding the reinstatement amount, the application of payments, and by producing loan documents that contained such statements. (*See id.* ¶ 428). The court must disregard such conclusory allegations. Accordingly, the court will dismiss the MFPA claims against the SN defendants.

## VI.     Debt Collection Claims

In Count X, the Howes assert that the SN defendants violated Maryland's Consumer Debt Collection Act ("MCDCA"). The MCDCA prohibits debt collectors from "utilizing threatening or

underhanded methods in collecting or attempting to collect a delinquent debt." *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 635–36 (D. Md. 2020) (internal quotation omitted). The act provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" Md. Code Ann., Com. Law § 14-202(8). To state a claim under the MCDCA, a plaintiff must plead that (1) the defendant did not possess the right to collect the amount of debt sought and (2) the defendant attempted to collect the debt knowing that it lacked the right to do so. *Barr*, 303 F. Supp. 3d at 420. To prevail on an MCDCA claim, the plaintiff must demonstrate that the defendant acted with knowledge as to "'. . . the invalidity of the debt.'" *Id.* (quoting *Lindsay v. Rushmore Loan Mgmt. Servs., LLC*, No. PWG-15-1031, 2017 WL 1230822, at *6 (D. Md. Apr. 4, 2017)). A debt may be considered invalid if a debt collector seeks to collect an amount that exceeded the amount owed as a result of the debt collector's inclusion of an unauthorized type of charge. *See Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016).

The Howes argue that the SN defendants' act of sending letters and notices claiming that the Howes owed more than they did violates the MCDCA's prohibitions on attempting to enforce a right with knowledge it does not exist. The complaint states that SN Servicing and PRP "knew" that the "plaintiffs were current on their loan after reinstatement" and nevertheless sent them "letters, statements, and notices" claiming the plaintiffs "owed more" than was "actually due." (FAC ¶ 445). Judge Russell of this court confronted and found wanting similar allegations in *Barr v. Flagstar*. In that case, the plaintiff pled that the defendant violated the same provision of the MCDCA by "sending notices" claiming that the plaintiffs "owe more than is actually due and which do not give [them] credit for the sums paid" because the plaintiffs were "current on their loan[.]" 303 F. Supp. 3d at 420. The court held that the plaintiffs had failed to state a claim under

the MCDCA because their complaint did not challenge the validity of the underlying debt and because the amount sought to be collected was not alleged to be excessive as a result of an unauthorized charge. *See id*. So too here, where the Howes's complaint does not contain any allegations of unauthorized charges (even if it does contain allegations of excess charges) or any allegations that challenge the validity of the underlying debt. Accordingly, the Howes have failed to state a plausible claim for relief under the MCDCA.[9]

### VII.   Real Estate Settlement Practices Claims

Finally, in Count XII, the Howes assert that SN Servicing violated the Real Estate Settlement Procedures Act ("RESPA"). RESPA requires the servicer of a federally related mortgage loan to acknowledge receipt of a Qualified Written Request ("QWR") within five business days of receipt. 12 U.S.C. § 2605(e)(1)(A). Thereafter, within thirty business days, the servicer must: (1) make corrections to the borrower's account; (2) after conducting an investigation, provide a written explanation stating the reasons the servicer believes the account is correct; or (3) conduct an investigation and provide the information requested by the borrower or an explanation of why the information is unavailable. *Id.* § 2605(e)(2). In the event a servicer fails to comply with this requirement, a plaintiff may recover actual damages that occur as a result of the servicer's failure. *Id*. § 2605(f)(1)(A). To state a claim under RESPA, a plaintiff must allege: (1) a written request that meets RESPA's definition of a QWR, (2) that the servicer failed to perform its duties, and (3) actual damages. *Barr*, 303 F. Supp. 3d at 417.[10] A valid QWR must

---

[9] This is fatal to the Howes's argument that the SN defendants' purported violations of the MCDCA are also *per se* violations of the MCPA. *See* Md. Code Ann., Com. Law § 13-301(14)(iii).

[10] A QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient

"relate to servicing" and not merely question the validity of a loan or request copies of loan documents for inspection. *See id*. at 418.

Here, the plaintiffs allege that they sent seven separate QWRs to SN Servicing challenging the amounts due and requesting various documents. (FAC ¶ 460). They argue it was a violation of RESPA to fail to correct the amounts owed and to fail to respond to the QWRs. (*Id.* ¶ 462). As a result, they contend that they suffered actual damages, including legal fees, harm stemming from poor credit reports, and emotional distress. (*Id.* ¶ 463). Thus, they have adequately alleged that they sent QWRs, to which SN Servicing did not respond, and which caused them actual damages. This is sufficient to state a RESPA claim.[11] Accordingly, the motion to dismiss the RESPA claim against SN Servicing will be denied.

***

In summary, the court will dismiss all claims against the WF defendants and all claims except the RESPA claim against the SN defendants. The RESPA claim against SN Servicing and all claims against the AMIP defendants survive the motion to dismiss for failure to state a claim.

## VIII.   The Remaining Claims

It is a separate issue, however, whether the surviving claims are sufficiently clear such that they satisfy Federal Rule of Civil Procedure 8(a)'s pleading requirements. The defendants believe they are not, and they seek to have the Howes's complaint dismissed under Rule 8(a) as a shotgun pleading or to require the Howes to provide a more definite statement under Rule 12(e).

---

detail to the servicer regarding other information sought by the homeowner." 12 U.S.C. § 2605(e)(1)(B).

[11] SN Servicing's argument that the Howes may not amend their complaint by way of their opposition is unavailing. The Howes did not seek to amend their complaint with their opposition; rather, in response to a motion attacking the sufficiency of their complaint, they pointed to specific paragraphs already in the complaint (albeit not in the relevant count itself) showing that they had stated a claim.

16

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and each allegation therein "must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d)(1). A shotgun pleading is a complaint that "fails to articulate claims with sufficient clarity to allow the defendant[s] to frame a responsive pleading.[]" *Knouse v. Primecare Med. of W. Va.*, 333 F. Supp. 3d 584, 592 (S.D.W. Va. 2018) (internal quotation omitted); *see generally Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–22 (11th Cir. 2015) (categorizing the various types of shotgun pleadings and noting that the most common type is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint). The proper remedy to address such shortcomings is typically to order a more definite statement. *See Weiland*, 792 F.3d at 1321 n.10; *see also* Wright & Miller, Fed. Prac. & Proc. § 1376 (3d ed., Oct. 2020 Update) ("Rule 12(e) motions are particularly useful when addressing so-called 'shotgun pleadings'").

The Howes's complaint, directed at eight different defendants, is 135 pages long, with 470 paragraphs, 109 footnotes, and 69 exhibits—22 of which do not appear to actually be attached to the complaint.[12] It contains rhetorical questions, extensive citations to legal authority, and legal arguments. Each of the thirteen counts incorporates by reference all prior paragraphs in the complaint, such that the final count incorporates the 464 paragraphs that precede it. It is arduous

---

[12] SN Servicing's claim that the complaint must dismissed on the basis of the unattached exhibits alone is without merit. The Northern District of California case cited for that proposition, *Carnero v. Washington Mutual*, held only that an amended complaint may not refer to exhibits attached to an earlier version of the pleading. No. C 09-5330 JF (PVT), 2010 WL 2889216, at *2 (N.D. Cal. July 22, 2010). And it cited as authority its own local rules rather than the Federal Rules. *See id*. Though a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), any reference to an exhibit not actually attached may simply be disregarded unless the court may take judicial notice of it.

reading, it is undeniably too long, and it is in some respects the very definition of a shotgun pleading. Though the defendants were able to clearly discern the basis for some of the claims asserted against them (and to mount a successful defense), the court agrees that the remaining claims are so vague and ambiguous that the defendants cannot reasonably be expected to prepare a response.[13]

Pursuant to Rule 12(e), the court will order counsel for the Howes to draft a more definite statement of their remaining claims, limited to 35 pages, to put the defendants on notice of which factual allegations relate to which cause of actions and which defendants. Needless to say, the more definite statement should omit all dismissed claims and all facts relevant only to those claims; all citations to legal authority; all rhetorical questions; any attempt to incorporate every allegation into every cause of action; and all other information which is not specified in Rule 8 as necessary to include in a complaint. The court hopes a more definite statement will allow the remaining defendants to frame a responsive pleading and, should any of the remaining claims survive any subsequent motion to dismiss, the court hopes it will also help to curtail needless discovery. The Howes are cautioned that the court has the authority to strike their complaint in its entirety if they do not provide a more definite statement in a timely fashion. *See* Fed. R. Civ. P. 12(e).

## CONCLUSION

For the reasons described herein, the WF defendants' motion to dismiss will be granted, the SN defendants' motion to dismiss will be granted in part and denied in part, and the AMIP defendants' motion for a more definite statement will be granted. The court will dismiss all claims against the WF defendants and PRP, and all claims except the RESPA claim against SN Servicing.

---

[13] The court was informed during oral argument that the original complaint was drafted by the Howes. Plaintiffs' counsel should have but did not correct the obvious deficiencies in that document.

The court will order that the Howes provide a more definite statement in compliance with Rule 8(a) as to the surviving claims against SN Servicing and the AMIP defendants. A separate order follows.

3/9/2021 _____                    _____ /s/ _____
Date                                        Catherine C. Blake
                                            United States District Judge