IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEFFREY V. HOWES, *et. al.*, | |
| v. | Civil No. CCB-20-670 |
| SN SERVICING CORP., *et. al.* | |

**MEMORANDUM**

After over a decade of litigating the pending foreclosure of their home up and down the state and federal courts, Jeffrey and Tonya Howes have now filed a third amended complaint in this court seeking a declaratory judgment that would nullify the foreclosure action against them in Maryland state court and requesting monetary and other relief for various consumer protection claims they levy against the defendants. The defendants filed three sets of motions to dismiss, each of which is fully briefed and none of which requires a hearing to resolve. *See* Local Rule 105.6. As explained below, issuing the Howeses' requested declaratory judgment would be tantamount to enjoining a state court proceeding, and the court must therefore dismiss the claim for declaratory judgment for lack of jurisdiction. The remaining consumer protection claims either depend upon factual developments in the foreclosure proceeding, are too conclusory to proceed, or fail to provide a short and plain statement of a claim. Accordingly, the motions to dismiss will be granted in part and stayed in part.

**BACKGROUND**

Jeffrey and Tonya Howes have been locked in a dispute with their lenders and debt servicers over the status of their home mortgage loan for over a decade. The dispute stems from a $696,130 construction loan the Howeses executed in 2001, secured by a mortgage on their

residence. Third Am. Compl. ¶ 10, ECF 77 ("TAC"). The loan agreement allowed the lender to assess late fees, reasonable attorneys' fees, and other costs. *See* TAC Ex. D, ECF 77-4. After completing construction on their home in 2003, the Howeses modified and converted the loan to a standard residential mortgage note with a principal balance of $650,000. TAC ¶ 11. Over the twenty years since, ownership interests in the note have ping-ponged between investors: it has purportedly been held at various times by Wells Fargo, U.S. Bank, Wilmington Savings Fund Society, American Mortgage Investment Partners, and others. *See* TAC ¶¶ 2-7, 12.

These investors, and their loan servicers, have been in litigation with the Howeses over payments on the loan for what has now been more than half its lifespan. The litigation began in 2010 when the ostensible note holder at the time, Wells Fargo, filed the first foreclosure action against the Howeses. TAC ¶ 18. Wells Fargo ultimately withdrew the first suit before filing a second one in 2012. TAC ¶¶ 19, 25.

In response to the second foreclosure action, the Howeses filed a voluntary petition for bankruptcy to prevent a foreclosure sale and subsequently initiated an adversary proceeding to dispute claims in the bankruptcy case. *See Howes v. Wells Fargo Bank, N.A.*, ELH-14-2814, 2015 WL 5836924, at *9 (D. Md. Sept. 30, 2015). The U.S. Bankruptcy Court dismissed the adversary action as "frivolous" and the Howeses appealed to the District Court for the District of Maryland. *See id.* at *11-15. Judge Hollander affirmed in a ninety-nine-page opinion and the Howeses again appealed, this time to the Fourth Circuit. *See Howes v. Wells Fargo Bank, N.A.*, 676 F. App'x 207 (4th Cir. 2017). The Fourth Circuit also affirmed insofar as the lower court order dismissed the Howeses' fraud claim and request for sanctions, but remanded the remaining claims for further proceedings to account for the factual development, revealed at oral argument, that the Howeses' original mortgage note, previously believed lost, "had in fact been discovered and was currently

being held by US Bank as trustee for a third-party real estate investment trust." *Id.* Consistent with this mandate, Judge Hollander remanded the case to the U.S. Bankruptcy Court. Order, *Howes v. Wells Fargo Bank*, ELH-14-2814 (D. Md. Mar. 16, 2017), ECF 45. The Howeses' responded by voluntarily dismissing the adversary proceeding and making a reinstatement payment, however, forestalling the contemplated proceedings and closing the bankruptcy case. *See* Notice of Dismissal, *Howes v. Wells Fargo Bank*, RAG-13-510 (Bankr. Md. May 15, 2017), ECF 104; Paperless Entry, *Howes v. Wells Fargo Bank*, RAG-12-30614 (Bankr. Md. Sept. 8, 2017); TAC ¶¶ 40-41.

After another year of payment disputes following the dismissal of the second foreclosure proceeding, American Mortgage Investment Partners, the new purported loan beneficiary, filed a third foreclosure action against the Howeses. *See* TAC ¶ 70. The Howeses filed a 138-page motion to stay and dismiss the foreclosure suit in response, *see* TAC Ex. B, ECF 77-2, and then brought a separate complaint in the Circuit Court for Howard County seeking declaratory, injunctive, and monetary relief on related claims, *see* Notice of Removal Ex. 1, ECF 1-2. The defendants removed that follow-on suit to this court, *see* Notice of Removal, ECF 1, and the foreclosure action was stayed with the Howeses ordered to deposit monthly payments into the circuit court registry, *see* Order, *Driscoll v. Howes*, C-13-cv-18-805 (Md. Cir. Ct. Howard Cnty. July 3, 2019).[1]

Upon arriving in this court in March 2020, the Howeses filed a 135-page first amended complaint containing 470 paragraphs and sixty-nine exhibits and naming at least seven defendants: (1) Wells Fargo Bank, N.A.; (2) U.S. Bank, N.A.; (3) SN Servicing Corporation; (4) American Mortgage Investment Partners Management, LLC; (5) FCI Lender Services, Inc.; (6) Wilmington

---

[1] The court takes judicial notice of the Maryland Judiciary Case Search website. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 639 n.1 (D. Md. 2015).

Savings Fund, FSB; and (7) Samuel I. White P.C. *See* First Am. Compl., ECF 8.

The defendants moved to dismiss the amended complaint for failure to state a claim or for a more definite statement. *See* ECFs 20-22. After considering these motions, the court issued its first opinion in this case, a March 2021 Memorandum and Order. *See* Mem., ECF 36; Order, ECF 37. The order granted Wells Fargo's motion to dismiss in full and granted in part and denied in part the remaining defendants' motions to dismiss. *See id.* As to the surviving claims, however, the court ordered the plaintiffs to file an amended complaint providing a more definite statement of the case. *See id*. In doing so, the court instructed the plaintiffs to promptly file a second amended complaint limited to thirty-five pages. *See* Mem. at 18, ECF 36.

Rather than immediately file the new complaint, however, the plaintiffs moved for reconsideration. ECF 38. The court denied the motion but granted the plaintiffs an extension of time to file a second amended complaint, ECF 45, which the plaintiffs ultimately filed in December 2021, ECF 50. The complaint levelled five claims at the various remaining defendants. The defendants moved to dismiss the second amended complaint for failure to state a claim, ECF 53, and to strike various portions of it as irrelevant and unnecessarily scandalous, ECF 51.

In April 2022, with the motion to dismiss and motion to strike fully briefed, the plaintiffs filed a second motion for reconsideration of the court's initial opinion, ECF 69, this time asking the court to partially reconsider its initial decision in light of the Maryland Supreme Court's decision in *Chavis v. Blibaum & Associates, P.A.*, 264 A.3d 1254 (Md. 2021).[2] The court recognized that *Chavis* did in fact represent a change in the controlling law governing the Howeses' Maryland Consumer Debt Collection Act ("MCDCA") and Maryland Consumer

---

[2] At the time, what is now the Maryland Supreme Court was referred to as the Maryland Court of Appeals.

Protection Act ("MCPA") claims, which it had previously dismissed in part. Mem., ECF 75. Accordingly, it granted the motion for reconsideration and permitted the Howeses to file a third amended complaint reintroducing their previously dismissed MCDCA and MCPA claims. *Id.* at 6-7. The court reserved ruling on whether those claims could advance until the parties had an opportunity to brief the question under *Chavis*, and so denied without prejudice the pending motions to dismiss and to strike, contingent upon the Howeses' filing a third amended complaint. *Id.* at 7-8.

On October 31, 2022, the Howeses filed the third amended complaint, reiterating the claims in their second amended complaint and adding the relevant MCDCA and MCPA claims. *See* TAC. The defendants docketed three separate motions to dismiss, filed in the following groups: (1) Samuel I. White P.C. ("White"), ECF 81; (2) SN Servicing Corporation and U.S. Bank Trust, N.A., as Trustee of PRP II PALS Investments Trust (collectively, the "SN" defendants), ECF 82; and (3) American Mortgage Investment Partners Management, LLC ("AMIP"), FCI Lender Services, Inc., and Wilmington Savings Fund, FSB, as Trustee of Residential Credit Opportunities Trust V-B ("RCO") (collectively, the "AMIP" defendants), ECF 84. The court now resolves these motions.[3]

## LEGAL STANDARD

The defendants each move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550

---

[3] In addition to these filings, the plaintiffs filed a consent motion for leave to file an opposition in excess of the court's page limit, ECF 90, and the defendants jointly filed a consent motion for an extension of time to file their replies, ECF 93. The court will grant both motions.

U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Under this standard, courts "must view the facts alleged in the light most favorable to the plaintiff," but "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

The third amended complaint seeks a declaratory judgment specifying the rights and obligations of each party to the foreclosure action in the Circuit Court for Howard County and alleges various consumer protection claims against each of the defendants. The defendants filed three separate motions to dismiss, which the court addresses in turn.

### I. AMIP Defendants' Motion to Dismiss

As discussed above, for purposes of this motion, the "AMIP" defendants include AMIP, RCO, and FCI. The third amended complaint alleges claims under the Declaratory Judgment Act against AMIP (Count I); under Maryland's Credit Grantor Closed End Credit Provisions, or "CLEC," against AMIP and RCO (Count IV); under the Maryland Mortgage Fraud Protection Act, or "MMFPA," against AMIP, RCO, and FCI (Count VIII); under the Maryland Consumer Debt Collection Act, or "MCDCA," and Maryland Consumer Protection Act, or "MCPA," against AMIP, RCO, and FCI (Count X); and under the Real Estate Settlement Practices Act, or "RESPA,"

6

against FCI (Count XIII). The AMIP defendants move to dismiss each claim.

### A. Declaratory Judgment Act Claim

Starting with the Declaratory Judgment Act claim, the plaintiffs ask the court to enter an order on at least six issues that, ultimately, would resolve the state court foreclosure proceeding. Specifically, they ask the court to declare that (1) the AMIP Defendants' foreclosure filings are insufficient under Maryland law; (2) the AMIP defendants may no longer violate Maryland law in the foreclosure proceeding; (3) no party in this case has an enforceable interest in the Howeses' mortgage loan under Maryland law; (4) any party who does have an interest in the loan is subject to any claims and defenses that would have applied to its predecessors in interest; (5) the Howeses are entitled to set-off, recoupment, or disgorgement of amounts paid to predecessors in interest exceeding the amount owed; and (6) the Howeses shall be provided with a proper accounting to determine what amount remains due on the loan. *See* TAC at 24.

As this recitation of the Howeses' Declaratory Judgment Act claim reveals, the complaint effectively asks the court to enjoin the state court foreclosure proceeding. Under the Anti-Injunction Act, however, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The rule also bars declaratory judgments that would have the same practical effect as an injunction. *See Denny's, Inc. v. Cake*, 364 F.3d 521, 528 n.8 (4th Cir. 2004); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015). As a result, a federal court may not issue a declaration that a mortgage note subject to ongoing state foreclosure proceedings is unenforceable, because to do so would preempt the state court action in exactly the same way as "an injunction to prevent foreclosure"—just the kind of "disruption of state proceedings that the long-standing policy

limiting injunctions was designed to avoid." *Tucker*, 83 F. Supp. 3d at 641 (quotations omitted). Yet this is precisely the relief the Howeses seek: the complaint requests a declaration that "no party may continue to prosecute" the foreclosure action and that no party "has established the right to enforce the Note," TAC at 24, even though the foreclosure suit remains open in state court, *see Driscoll v. Howes*, C-13-cv-18-805 (Md. Cir. Ct. Howard Cnty). Accordingly, "this Court cannot grant their request for a declaratory judgment," and must instead grant the AMIP defendants' motion to dismiss Count I. *Tucker*, 83 F. Supp. 3d at 641; *see Brooks v. Cama Self Directed IRA, LLC*, JKB-18-2299, 2019 WL 418412, at *4 (D. Md. Jan. 31, 2019) (same); *Henry v. Aurora Loan Servs., LLC*, TDC-14-1344, 2016 WL 1248672, at *3 (D. Md. Mar. 25, 2016) (same).[4]

**B. Consumer Protection Claims Under State Law**

With jurisdiction over the request for a declaratory judgment ceded to the Circuit Court for Howard County, the court will stay the plaintiffs' remaining state law claims against the AMIP defendants. After all, the foreclosure matter is the "foundational" dispute upon which much of the plaintiffs' related claims depend, *Howes*, 2015 WL 5836924, at *24, and the plaintiffs represent that it could "serve to terminate the controversy between the parties," *see* TAC ¶ 93. As the plaintiffs explain, their CLEC claim is "contingent upon" issues that will be decided by the state

---

[4] The court is obligated to raise the Anti-Injunction Act issue *sua sponte* because it deprives the court of subject matter jurisdiction over the plaintiffs' claim. *Tucker*, 83 F. Supp. 3d at 641 n.4. The court also notes that dismissal of the Declaratory Judgment Act claim is consistent with the prior exclusive jurisdiction doctrine, under which a suit that "seeks equitable relief concerning property that already is the *res* (the subject) of an ongoing *in rem* action in another court"—such as a state foreclosure proceeding—must yield to "the earlier-filed suit," *Tucker*, 83 F. Supp. 3d at 641-42, principles of abstention, under which courts in this District have "frequently" abstained "where there are ongoing foreclosure proceedings in the state court," *Dorsey v. Clarke*, WMN-15-3506, 2016 WL 4205769, at *3 (D. Md. Aug. 10, 2016) (collecting cases), and the plaintiffs' own acknowledgment that they have asked the court "to decide issues regarding the foreclosure that are usually decided by the Maryland Circuit Court during its adjudication of a borrower's motion to stay or dismiss," Opp'n to AMIP Mot. to Dismiss at 13-14 & n.1, ECF 91.

court in the parallel proceedings. Opp'n to AMIP Mot. to Dismiss at 14 n.2, ECF 91. Similarly, the MMFPA claim alleges that AMIP, RCO, and FCI filed false documents in the foreclosure action, and is thus appropriately stayed pending the outcome of that litigation which will necessarily resolve the validity of those filings. *See* TAC ¶¶ 70-72, 130. The MCDCA and MCPA claims likewise depend, at minimum, on the AMIP defendants' authority to collect on the note—and the amount they were entitled to collect—another issue the state court will inevitably decide. All told, then, the plaintiffs' consumer protection claims under Maryland law are each predicated upon the outcome of the state court foreclosure proceeding and are appropriately stayed pending resolution of that suit.

### C. Consumer Protection Claims Under Federal Law

The court's dismissal of the declaratory judgment claim and stay of the state consumer protection claims leaves, as to the AMIP defendants, only the federal RESPA count against FCI, a claim that does not obviously depend upon the outcome of the foreclosure case. Under RESPA, servicers of federally related mortgage loans have an obligation to respond to "qualified written requests" from borrowers. 12 U.S.C. § 2605(e). A "qualified written request" is a written notice from a borrower notifying the servicer of a possible inaccuracy on the account and explaining why the borrower believes the account is in error. *Id.* § 2605(e)(1)(B). After a covered servicer receives such a request, it must acknowledge receipt within five days. *Id.* § 2605(e)(1)(A). The servicer must then investigate the account and, within thirty days, make any appropriate corrections, explain the account's accuracy in writing, and provide additional information requested by the borrower. *See id.* § 2605(e)(2). A borrower may seek damages for a servicer's failure to comply with RESPA by alleging (1) the borrower submitted a qualified written request; (2) the servicer failed to perform its statutory duties upon receiving the request; and (3) actual damages. *Barr v.*

*Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018).

The plaintiffs explain that, on August 15, 2023, they sent a qualified written request to FCI disputing the validity of their debt and demanding that FCI verify it. TAC ¶ 74. Although the plaintiffs acknowledge that FCI responded to the letter, they maintain that FCI failed to correct the errors they identified, did not "fully respond" to the plaintiffs' request, and did not "provide the requested documentation within thirty business days." TAC ¶¶ 76, 165. As a result, they claim, they have suffered from increased legal fees, inaccurate credit reports, unwarranted late fees, inability to refinance, emotional distress, and other harms.

These allegations are too conclusory to survive FCI's motion to dismiss. To start, the plaintiffs' assertion that FCI did not accurately account for the errors they identified raises an issue with the validity of the debt itself—not with FCI's obligations to explain the account balance under RESPA—and so does nothing to advance the RESPA claim. At the same time, the plaintiffs' allegation that FCI did not "fully respond" to their request is a bare assertion that fails to explain with any specificity how FCI's response was deficient. The same is true of the claim that FCI failed to provide the required documentation. The complaint does not specify the specific documents that FCI should have, but did not, provide, and the allegation is further belied by the plaintiffs' admission that FCI did in fact supply copious documentation to support its response. *See* TAC ¶ 76. For all these reasons, FCI's motion to dismiss Count XIII will be granted.

**II. White's Motion to Dismiss**

The third amended complaint levies two claims, the Declaratory Judgment Act claim (Count I) and the MCDCA and MCPA claims (Count X), against Samuel I. White P.C., a law firm retained by the AMIP defendants in connection with their servicing of the Howeses' loan. White moves to dismiss both counts. As discussed above, the court lacks jurisdiction over the plaintiffs'

Declaratory Judgment Act claim, so for the same reasons it dismissed that claim against the AMIP defendants, it will dismiss it as to White as well. The MCDCA and MCPA claims, meanwhile, must be dismissed on the merits notwithstanding the state court proceedings because, as to White, the complaint is completely deficient.

Under the MCDCA, a debt collector may not (1) attempt to collect a debt it has no right to collect with (2) knowledge it lacks the right to do so. *Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254, 1265 (Md. 2021). A debt collector has the requisite knowledge if it actually knew it lacked the right to collect the debt or exhibited reckless disregard to that fact. *Id.* at 1271. Under the MCPA, on the other hand, a debt collector may not engage in "unfair or deceptive trade practices in connection with" collecting consumer debts. *Barr*, 303 F. Supp. 3d at 415-16. A claim accrues under the MCPA where (1) a debt collector engages in an unfair or deceptive practice; (2) the plaintiff relies upon the debt collector's actions; and (3) the plaintiff suffers actual injury as a result. *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542, 557 (D. Md. 2021). A violation of the MCDCA is a per se violation of the MCPA. *Chavis*, 264 A.3d at 1265.

The plaintiffs allege that White, among other defendants, violated the MCDCA, and, as a necessary consequence, the MCPA, by knowingly "attempting to collect, collecting, and retaining interest, fees, unauthorized charges, and amounts in excess of the principal amount of the Note." TAC ¶¶ 139-40. Although, for the reasons discussed above, the court does not reach the question of whether the complaint has sufficiently alleged that the AMIP defendants had no right to the debts they employed White to collect, the claim still must fail as to White because the complaint is devoid of any allegation that White knew or should have known it lacked a right to collect the debt. To the contrary, the complaint explains that when the Howeses sent a letter to White disputing the debt, White responded confirming that the firm had "verified that the debt is due and owing."

11

*See* TAC ¶¶ 80-83. This allegation indicates that White—whether correctly or not—at least believed it was authorized to collect the debt. No allegation in the complaint can support an inference to the contrary, and indeed the plaintiffs' opposition brief all but abandons the claim against White.[5] The MCDCA claim will therefore be dismissed. The corresponding MCPA claim appears to be solely premised on the purported MCDCA violation, *see* TAC ¶ 140, and in any event, the complaint does not contain sufficient allegations to maintain an MCPA claim against White on a separate theory, so it will likewise be dismissed.

### III. SN Defendants' Motion to Dismiss

SN Servicing and U.S. Bank, the "SN" defendants, are also the subject of two counts of the third amended complaint. The complaint alleges that the SN defendants are liable for violations of the MCDCA and MCPA (Count XI) and RESPA (Count XII). The court denied the SN defendants' motion to dismiss the RESPA claim in the first amended complaint, and they do not renew it here; they move only to dismiss the MCDCA and MCPA claims under Federal Rules of Civil Procedure 8 and 12 for failing to contain a short and plain statement of the claim and failing to state a claim upon which relief may be granted.[6]

Under Federal Rule of Civil Procedure 8, a complaint must provide a short and plain statement of the claim that shows through simple, concise, and direct allegations that the pleader is entitled to relief. Fed. R. Civ. P. 8(a), (d). A lengthy pleading containing a confusing factual narrative or overreliance on conclusory statements of law places an unjustified burden on the court and any party who must respond. *See North Carolina v. McGuirt*, 114 F. App'x 555, 558-59 (4th

---

[5] The fourteen pages of the opposition brief the plaintiffs dedicate to defending their MCDCA and MCPA claims makes only a single passing reference to White, citing the portion of the complaint that in fact cuts in White's favor. *See* Opp'n to AMIP Mot. to Dismiss at 38 (citing TAC ¶¶ 83-90).

[6] The pleading standard for MCDCA and MCPA claims is set out above.

Cir. 2004).[7] The court therefore may, in its discretion, dismiss a complaint if it is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also McGuirt*, 114 F. App'x at 559; *McCrea v. Wells Fargo*, RDB-18-2490, 2019 WL 2513770, at *7 (D. Md. June 17, 2019), *aff'd*, 852 F. App'x 112 (4th Cir. 2021).

The court's opinion on the first amended complaint dismissed a subset of the identifiable claims and then ordered the plaintiffs "to draft a more definite statement of their remaining claims, limited to 35 pages, to put the defendants on notice of which factual allegations relate to which cause of actions and which defendants." Mem. at 18, ECF 36. That complaint was apparently drafted by the Howeses themselves and was "so vague and ambiguous that the defendants [could not] reasonably be expected to prepare a response." *Id.* at 18 & n.13. Indeed, the court characterized it as "arduous reading," "undeniably too long," and "in some respects the very definition of a shotgun pleading." *Id.* at 17-18. Accordingly, the court directed the plaintiffs to file an amended complaint omitting "all dismissed claims and all facts relevant only to those claims; all citations to legal authority; all rhetorical questions; any attempt to incorporate every allegation into every cause of action; and all other information which is not specified in Rule 8 as necessary to include in a complaint." *Id.* at 18. It then concluded by warning the Howeses that it retained "the authority to strike [the] complaint in its entirety if they [did] not provide a more definite statement in a timely fashion." *Id.* (citing Fed. R. Civ. P. 12(e)).

The third amended complaint, at least as to the MCDCA and MCPA claims against the SN defendants, fails to resolve these issues. Although the complaint complies with the court's page

---

[7] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

limit and directive to excise dismissed claims, legal citations, and rhetorical questions, it ignores the court's critical order not to incorporate every allegation into every cause of action, instead incorporating by reference all nineteen pages and ninety paragraphs of the factual allegations into each claim. Meanwhile, those factual allegations remain arduous reading, spinning a scattershot narrative to which the defendants can hardly be expected to respond. And on top of all this, much of the complaint is devoted to factual allegations against Wells Fargo, which is no longer a party to this suit, without articulating any cogent connection between Wells Fargo's conduct and the SN defendants' knowledge of that purported misconduct (a required element for the plaintiffs' MCDCA claim and corresponding MCPA claim). All these factors make it virtually impossible to align the complaint's factual allegations with any particular defendant or claim. *Cf. McGuirt*, 114 F. App'x at 558-60; *McCrea*, 2019 WL 2513770, at *7. Accordingly, the court will dismiss Count XI for failure to comply with Rule 8.

## CONCLUSION

For the reasons discussed above, the court will grant the AMIP and White defendants' motions to dismiss Count I, grant White's motion to dismiss Count X, grant the SN defendants' motion to dismiss Count XI, grant the AMIP defendants' motion to dismiss Count XIII, and stay the AMIP defendants' motion to dismiss the remaining counts. The Howeses and SN defendants will be directed to provide to the court their positions on how to proceed with Count XII during the pendency of the state court litigation.

A separate order follows.

 July 13, 2023                                    /s/
Date                                               Catherine C. Blake
                                                   United States District Judge