**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| JEFFREY V. HOWES, et. al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | NO. 1:20-cv-00670-CCB |
| | * | |
| SN SERVICING CORPORATION, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' OPPOSITION TO DEFENDANT SN SERVICING CORPORATION'S
MOTION TO DISMISS COUNT XII OF PLAINTIFFS' THIRD AMENDED
COMPLAINT**

# TABLE OF CONTENTS

I.      Introduction.......................................................................................................... 1

II.     Background .......................................................................................................... 3

III.    Argument ............................................................................................................. 5

        A.      Standard of Review.................................................................................. 5

        B.      Plaintiffs Have Alleged that SN Violated RESPA and Regulation X by Failing to
                Correct the Errors (12 C.F.R. § 1024.35) on Their Mortgage Account and Provide
                Information That Was Requested Related To Their Loan (12 C.F.R. § 1024.36) in
                Seven Notice Of Error and Request for Information Letters (Count XII).............. 6

                1.      RESPA and Regulation X .......................................................... 6

                2.      Plaintiffs' TAC asserts plausibility claims for violations of RESPA and
                        Regulation X ........................................................................... 9

IV.     Conclusion ......................................................................................................... 14

Plaintiffs Jeffrey V. Howes ("Mr. Howes") and Tonya Howes ("Mrs. Howes") (collectively referred to as "the Howes" or "Plaintiffs"), by counsel, file this opposition to Defendant SN Servicing Corporation's ("SN") Motion to Dismiss (ECF No.100), and accompanying memorandum of law (ECF No. 100-1), Count XII of Plaintiffs' Third Amended Complaint ("TAC") alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), and Regulation X, its enforcing regulation.

I.    **INTRODUCTION**

The Court must deny SN's Motion to Dismiss Plaintiffs' RESPA claim (Count XII) because, as the Court has already found, Plaintiffs have set forth sufficient facts in their complaint and accompanying exhibits to state a claim. ECF No. 36, at 16 (denying SN's motion to dismiss Count XII of Plaintiffs' FAC). Plaintiffs allege that between July 11, 2017, and July 18, 2018, they sent SN seven Request for Information ("RFI")/Notice of Error ("NOE") letters describing in precise detail the information they were requesting from, and noticing the servicing errors committed by, SN as detailed below. TAC ¶ 45-52, 157-160; TAC Ex. C. All seven letters were attached to the TAC and incorporated by reference. Plaintiffs allege that despite these specific requests and noticed errors, SN failed to produce the requested information and reasonably investigation, or correct, the errors, and respond to Plaintiffs within the statutory period set forth by RESPA and Regulation X, and that Plaintiffs were injured because of these failures. At the pleading stage, that is all that is necessary for Plaintiffs claim to advance.

Despite the Court's earlier ruling denying its motion to dismiss Plaintiffs' RESPA claim, the fact that SN answered the Second Amended Complaint ("SAC") containing the identical count (ECF No. 52, at ¶ 145-150) , and SN's own failure to move to dismiss the claim in its first motion to dismiss the TAC (ECF No. 82), SN now belatedly files its Motion to Dismiss Count XII because

1

the Court recently dismissed Plaintiffs' separate RESPA claim against a third-party, FCI. While Plaintiffs disagrees with the Court's dismissal of their claim against FCI for the reasons stated in their opposition thereto, SN's attempt to piggyback on that decision is improper and ineffective because Plaintiffs' RESPA claim against SN is factually and legally distinguishable. While SN focuses on the similar language used in Count XII and Count XIII, it completely ignores the additional factual assertion provided in the TAC and the seven letters contained in Exhibit C (as detailed below) setting forth in detail the information that was not produced and the errors that were not investigated or corrected by SN. Viewing all facts as true and all inferences in the light most favorable to Plaintiffs, the TAC contains the necessary factual assertions upon which their RESPA claims can be stated.

In the alternative, should the Court overrule its previous decision and find that the TAC does not set forth the facts sufficient to plausibly assert a claim under RESPA against SN, Plaintiffs should be granted the right to amend their complaint and the thirty-five-page limit instituted by the Court should be extended to forty-five pages. As demonstrated by SN's actions and statements, it was the understanding of the parties that Plaintiffs had stated a claim under RESPA, and that the claim was going to move forward to discovery. Like SN, Plaintiffs also relied upon this understanding when drafting their SAC and TAC. Plaintiffs did not repeat all factual details contained in the seven letters (TAC Ex. C) or Plaintiffs verified Motion to Stay or Dismiss the Foreclosure (TAC Ex. B) in the numbered paragraphs of the TAC as to avoid being repetitive or overly factually inclusive. Also, as demonstrated in SN's Motion, Plaintiffs did not make substantive changes to their allegations contained in Count XII as to not distribute the basis for the Court's previous ruling. *Compare* ECF No. 008, at ¶ 458-464 with ECF No. 77, at ¶ 156-161. Plaintiffs, nor SN, had any reason to believe that the substantively same allegations would be

sufficient to state a claim in the FAC, but not in the TAC. Given this reality, and the Court's ruling that under the FAC there is a set of facts upon which Plaintiffs can assert a claim under RESPA, the Plaintiffs should be entitled to amend their complaint should the Court rule against them on this motion.

## II.   BACKGROUND

On July 23, 2020, SN moved to dismiss Plaintiffs' First Amended Complaint ("FAC"), including their RESPA count, arguing "that Plaintiffs failed to allege: (1) "which of the various letters referenced in the Complaint allegedly constitute QWRs/Notices of Error"; (2) which of those letters did SN[] allegedly fail to respond to"; and (3) "what actual damages did Plaintiffs allegedly suffer, if any, as a result of SN['s] alleged failure as to each such letter." SN Motion, at 3 (citing ECF No. 21-1 at 16). The Court denied the motion as to the RESPA count, ruling that Plaintiffs had sufficiently alleged their RESPA claims:

> Here, the plaintiffs allege that they sent seven separate QWRs to SN Servicing challenging the amounts due and requesting various documents. (FAC ¶ 460). They argue it was a violation of RESPA to fail to correct the amounts owed and to fail to respond to the QWRs. (Id. ¶ 462). As a result, they contend that they suffered actual damages, including legal fees, harm stemming from poor credit reports, and emotional distress. (Id. ¶ 463). Thus, they have adequately alleged that they sent QWRs, to which SN Servicing did not respond, and which caused them actual damages. This is sufficient to state a RESPA claim.

ECF No. 36, at 16. Also in that decision, the Court ordered the Plaintiffs to file an amended complaint and limited the length of the complaint to thirty-five pages. ECF No. 36, at 18.

On December 20, 2021, Plaintiffs filed their SAC which complied with the Court's order to limit it to thirty-five pages. While the SAC itself contained less detail than the FAC, Plaintiffs allegations against SN for its RESPA count remained consistent, as they have in the TAC. On January 25, 2022, SN answered the SAC including responding to Plaintiffs' claims regarding RESPA. *See* ECF No. 52, at ¶ 145-150. On January 20, 2022, SN filed a Motion to Strike

3

Allegations from Plaintiffs' Second Amended Complaint and its accompanying memorandum of

law. ECF No. 51; ECF No. 51-1. In that motion, SN thoroughly described Plaintiffs RESPA Claim

as follows:

> As to SNSC specifically, the lone remaining RESPA claim against it alleges only
> that Plaintiffs sent seven separate letters to SNSC purportedly constituting notices
> of error and requests for information pursuant to 12 U.S.C. § 2605(e) and 12 U.S.C.
> § 1024.35-.36, and that SN allegedly violated § 2605(e) by failing to investigate the
> errors, failing to correct the errors, and failing to fully respond or provide the
> requested documentation within 30 business days. *See* SAC, ECF No. 50, ¶¶ 146-
> 149. Moreover, based on Plaintiffs' representations in their September 18, 2020
> Opposition to SNSC's Motion to Dismiss, the seven letters at issue are dated July
> 11, 2017, August 29, 2017, October 7, 2017, December 29, 2017, January 26, 2018,
> May 18, 2018, and July 17, 2018. *See* ECF No. 26 at 10; *see also* SAC, ECF No.
> 50, ¶ 52 (alleging that Plaintiffs sent seven QWR/NOE letters between July 11,
> 2017 and July 18, 2018). Thus, the relevant time period to determine whether
> Plaintiffs transmitted valid QWR/NOEs to SNSC and whether SNSC appropriately
> processed and responded under RESPA begins around July 11, 2017.

ECF No. 41-1, at 4.

Because of a change an intervening change in the law, on April 29, 2022, Plaintiffs filed a

motion to reconsider the Court's dismissal of their claims under the MCDCA, and MCPA, which

the Court granted on September 29, 2023. ECF No. 69; ECF No. 75. Also, in that ruling, the Court

denied SN's Motion to Strike as moot, but stated that it was "confident the allegations will not

interfere with SN's ability to respond to the RESPA, MCDCA, or MCPA claims against it because

the court has by now clearly *identified the scope of each claim*." *See* ECF No. 75, at 8 (emphasis

added). Demonstrating once again, the Court's clear opinion that the Plaintiffs' RESPA claim is

sufficiently plead.

On October 21, 2022, Plaintiffs filed their operative TAC reinserting their MCDCA,

MCPA, and RESPA claims against SN. *See* ECF No. 77. On December 12, 2022, SN moved to

dismiss Plaintiffs' MCDCA and MCPA claims, but did not move to dismiss Plaintiffs' RESPA

claims. *See* ECF No. 82. On July 13, 2023, the Court granted SN's motion to dismiss Plaintiffs'

4

MCDCA and MCPA claims. *See* ECF No. 96. Also, in that opinion, the Court granted co-defendant FCI's motion to dismiss Plaintiffs' RESPA claim against it. *Id.* It is this dismissal upon which SN bases its belated motion to dismiss.

## III.   ARGUMENT

### A.   Standard of Review

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A complaint may survive a motion to dismiss if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 869 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)). "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Even if the court believes that relief is unlikely, a complaint will still

survive a motion to dismiss if the facts alleged in the complaint raise the "right to relief above the speculative level." *Twombly*, at 555-556 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)).

**B.     Plaintiffs Have Alleged that SN Violated RESPA and Regulation X by Failing to Correct the Errors (12 C.F.R. § 1024.35) on Their Mortgage Account and Provide Information That Was Requested Related to Their Loan (12 C.F.R. § 1024.36) in Seven Notice Of Error and Request for Information Letters (Count XII)**

The Court should once again deny SN Servicing's motion to dismiss Plaintiffs' claims for violation of RESPA and its enforcing regulation, Regulation X, 12 C.F.R. § 1024.01 *et seq.* as the TAC alleges facts that plausibly support such a cause of action. Plaintiffs assert that SN violated RESPA when:

> [b]etween July 11, 2017, and July 18, 2018, the Howes sent seven QWR/NOE letters to SN, noting the errors on the account, disputing the validity of the debt, and requesting a full accounting and evidence of a right to collect. SN failed to respond to five of the letters, and responded untimely and insufficiently to two letters. The Howes have suffered actual damage because of SN's failure to correct the errors including but not limited to having to incur additional legal fees to proceed with the filing of this action, incorrect information appearing on their credit reports, lost time and aggravation preparing challenges to the incorrect information on a credit report, SN and PRP's attempts to collect additional late fees, and the emotional distress which would not have existed but for their failure to correct the errors and reinstate the account.

TAC ¶ 52, Ex. C; see also TAC ¶ 157-161. The seven letters sent by Plaintiffs describe in precise detail the errors which were not reasonable investigated or corrected as well as the documents and information which was not timely provided.

*1.     RESPA and Regulation X*

RESPA is a remedial consumer-protection statute, and "should be construed liberally in order to best serve Congress's intent." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016); *In re Carter*, 553 F.3d 979, 985 (6th Cir. 2009) ("According to traditional canons of statutory interpretation, remedial statutes should be construed broadly to extend coverage and their exclusions or exceptions should be construed narrowly.") (internal citation omitted).

Congress enacted RESPA to provide consumers "with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). In the plain text of RESPA, Congress established the duties and scope of the statute, as amended by Dodd-Frank, to include responding to borrowers' written requests, notification of errors, and foreclosure prevention. 12 U.S.C. § 2605(e); 12 U.S.C. § 2605(k)(1)[1]. To further carry out RESPA's remedial purpose, Congress authorized the CFPB to also promulgate regulations to aid its enforcement, Regulation X. *See* 12 U.S.C. § 2605(j)(3); 124 Stat. 1376 at § 1098(4); Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 FR 10696-01.

Under the RESPA and Regulation X, a borrower has the right to send their servicer a letter to request information regarding their loan (RFI) and to notify the servicer of errors associated with their loan account (NOE). A borrower's letter can be both a RFI and a NOE. A borrower only needs to include in their letter their name, information to allow the servicer to identify the loan, such as a loan number, and a description of the error(s) the borrower asserts occurred, or the information a borrower is requesting to be treated as a NOE or RFI. See 12 C.F.R. § 1024.35(a); 12 C.F.R. § 1024.36(a). Upon receipt of NOE/RFI, the servicer must acknowledge receipt of the letter with five business days. 12 C.F.R. § 1024.35(d); 12 C.F.R. 1024.36.

A servicer is required to respond to any written request for information from a borrower that "states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a). Unlike the earlier version of this regulation that applied to qualified written requests, the scope of an information request under Regulation X, Section 1024.36 is no

---

[1] "A servicer of a federally related mortgage shall not...(C) fail to take timely action to respond to a borrower's requests to correct errors relating to...avoiding foreclosure, or other standard servicer's duties...or (E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

longer tied solely to the concept of information that is "related to the servicing" of the loan. Rather, requests are effective if they seek any information concerning the borrower's mortgage loan, which would include, but would not be limited to, the servicing of the loan. Thus, the question as to whether the borrower has sent a valid information request no longer turns on the narrow definition of "servicing" found in RESPA that focuses on the receipt of payments from the borrower. *Joussett v. Bank of Am.*, 2016 WL 5848845, at *3 (E.D. Pa. Oct. 6, 2016) ("Section 1024.36(a) explicitly covers more than just requests relating to loan servicing, extending to 'any written request for information from a borrower.'") (emphasis in original)); *Cole v. JPMorgan Chase Bank*, 2016 WL 4491731 (S.D. Ohio Aug. 25, 2016) (rejecting servicer's reliance on decisions that had held that requests must relate to the loan's servicing). *Cf Garey v. BWW Law Group, LLC*, 8:19-CV-03112-PWG, 2021 WL 4521329, at *14 (D. Md. Oct. 4, 2021) (describing the difference between a qualified written request, RFI, and NOE).

When a servicer receives an RFI, it must within thirty business days investigate and respond to the request by "(i) Providing the borrower with the requested information and contact information" or "Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance." 12 C.F.R § 1024.36(d)

Similarly, within thirty business days of receipt of a notice of error, a servicer is required to respond to the borrower in writing stating either (i) the effective date of the correction of error, or (ii) that the servicer has determined after a reasonable investigation that no error occurred. If the servicer determines that no error occurred, the servicer must provide to the borrower a

statement of the reason(s) for this determination, and a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination. *Id.* § 1024.35(e). *Wirtz v. Specialized Loan Servicing, L.L.C.*, 886 F.3d 713, 717 (8th Cir. 2018) (mortgage loan servicers have a "substantive obligation . . . to conduct a reasonably thorough examination before responding to a borrower's qualified written request."); *See also Saccameno v. Ocwen Loan Servicing, L.L.C.*, 372 F. Supp. 3d 609, 640 (N.D. Ill. 2019), *remanded on other grounds*, 943 F.3d 1071 (7th Cir. 2019) ("A jury could reasonably have concluded that Ocwen's failure to recognize its error—especially after being given a second opportunity—was due to its failure adequately to investigate the matter."). RESPA prohibits a servicer from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties…" 12 U.S.C. § 2605(k)(1)(C). Further, Regulation X enumerates eleven different types of covered errors. 12 C.F.R. § 1024.35(b).

> 2.   *Plaintiffs' TAC asserts plausibility claims for violations of RESPA and Regulation X*

Here, each of Plaintiffs letters is an RFI or NOE, or both under RESPA and Regulations X, as they were sent to SN, contained the Plaintiffs' names, and loan numbers, and described in detail the information they were requesting and the errors that SN had committed. *See* TAC ¶ 52, Ex. C (ECF No. 77-3); *see* 12 C.F.R. § 1024.35(a); 12 C.F.R. § 1024.36(a).

Next, the TAC and the letters detail the information that was requested, but not produced[2], and the errors committed, but not reasonably investigated or corrected[3], within the statutory period.

---

[2] Including information and documents "showing the date of each received payment, the amount of each payment, a break down showing how each payment was applied, an accurate payoff amount, and documents related to any rejected payments." TAC ¶ 158.

[3] Including "the amounts due (including unaccounted for fees), the application of payments, and various other items were incorrect as it relates to their loan." TAC ¶ 157.

For example, on or around July 11, 2017, Plaintiffs sent their First NOE/RFI to SN asserting that SN had errored, *inter alia*, by demanding $11,584 for property taxes as part of the reinstatement and payoff amount that had already been paid by Plaintiffs, and by failing to deem the loan reinstated even after Plaintiffs paid $451,000 when only $446,271.99 was demanded. *Id.*, ECF 77-3, at 1. Plaintiffs also stated that they had previously requested itemized breakdowns of attorney's fees in the amount of $3,471.12, corporate advances of $15,937.01, and late fees of $8,914.02, and reiterated such as request. *Id.*, ECF 77-3, at 3. Plaintiffs then stated nine specific questions asking for information or documents to be produced including: a full loan history (question 5), a detailed summary of all corporate advances that were included in the reinstatement (question 6), a copy of all information that had been provided to consumer reporting agencies (question 7), and an explanation and itemization for the $2,923 in attorney's fees and $908.12 in foreclosure costs assessed on June 12, 2017 (question 8). *Id.*, at 4.

On August 29. 2017, Plaintiffs sent their Second NOE/RFI outlining in detail the information they had not been provided in violation of RESPA and Regulation X. See TAC Ex. C, at 6. On October 7, 2017, Plaintiffs, having not received a response to their Second NOE/RFI, sent a Third NOE/RFI. *Id.*, at 7. Plaintiffs reiterated the previously requested information that had not been produced including full account ledger showing all debits and credits, an itemized accounting of all attorney's fees, corporate advances, and other fees charged on the account as well as SN's failure to answer or response to questions 4, 5, 6, 7, 8, and 9 from the First NOE/RFI. *Id.,* at 7-8. As October 7, 2017, was more thirty business days from July 11, 2017, the TAC sets forth the information that was not provided, and the errors that were not reasonable investigated, or corrected within the statutory period, and thus, a valid claim under RESPA.

However, the specific allegations of violations of RESPA and Regulation X, do not stop

10

there as each successive letter detailed exactly what information had been requested, or errors asserted, and how SN had failed to comply, or asserted new request for information, or noticed new servicing errors. *See* Ex. C, at 10[4], 13[5], 14[6]. Finally, Plaintiffs sent their Seventh NOE/RFI letter, dated July 17, 2018, in which they detailed the history of the communications between the parties, the "[e]xisting contested matters, raised previously, and remaining unaddressed", and "[p]rior requests for information that remained unfulfilled." TAC Ex. C, at 15-21. Under the existing contested matters section, Plaintiffs identified the following errors that had not been investigated or resolved including (1) the inclusion of the $11,584 in 2016 property taxes being included in the reinstatement amount; (2) the inclusion for $3,471.12 and $15,937.01 in inappropriate and/or illegal attorney fees and corporate advances, respectively, neither of which were itemized despite Plaintiffs' repeated requests for such itemization; and disputed late fees in the amount of $8,914.02; and SN's failure to mark the account as reinstated effective May 24, 2017 despite receipt of payment in excess of the amount demanded. TAC Ex. C, at 19. Plaintiffs also specified the exact information which was still outstanding from their First NOE/RFI, made approximately one year earlier, including: (1) itemization of all fees listed on the

---

[4] Plaintiffs' Fourth NOE/RFI letter, dated December 29, 2017, reiterated that the $11,584 property tax issue was yet to be resolved, the loan had never been deemed to be reinstated, that SN had pre-paid the 2017 taxes without explanation, and had charged Plaintiffs over $2,000 in unaccounted for attorney's fees and costs. TAC Ex. C, at 10-12.

[5] Plaintiffs' Fifth NOE/RFI letter, dated January 26, 2018, stated that while SN had sent a letter dated January 22, 2018, that the documents the letter stated were "enclosed" were not included with the letter including copies of the note or mortgage or other documents by which the loan was supposedly acquired. TAC Ex. C, at 13.

[6] Plaintiffs' Sixth NOE/RFI letter, dated May 18, 2018, stated that Plaintiffs had not received a response to their Fifth NOE/RFI and that they were still waiting for SN to address the issues previous raised including "corrections to the erroneous amount due stated, removal of inappropriate fees, and a letter confirming the good standing status on May 24, 2017" when Plaintiffs paid more than was demanded. TAC Ex. C, at 14-15.

foreclosure/reinstatement demand letters from attorneys including attorney's fees, corporate advances, and late fees; (2) confirmation that the account was bought current when Plaintiffs made the $451,000; (3) a full account history showing how payments were applied; (4) an itemized accounting for all fees that were applied after the reinstatement payment; and (5) a copy of any and all information supplied to the credit reporting agencies. *Id.*, at 19-20. SN never responded to Plaintiffs' Seventh NOE/RFI and the outlined errors remained uncorrected, and the requests for information unfulfilled when the alleged servicing of the loan was transferred to FCI in August of 2018. TAC ¶ 73-74; TAC Ex. M, at 2 (ECF No. 73-13).

Plaintiffs' requests for information are proper RFIs under Regulation X as they request information regarding the loan. 12 C.F.R. § 1024.36(a). Also, the errors asserted are covered errors under Regulation X as they relate to SN's "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law;[]"[7] "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower[;]"[8] "[f]ailure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 C.F.R. 1026.36(c)(3)[;]"[9] and the catch-all provision for "[a]ny other error relating to the servicing of a borrower's mortgage loan."[10] Thus, SN was required to respond within 30 business days with the requested information. As for the noticed errors, SN was required to respond within 30 business days by either stating (i) the effective date of the correction of error,

---

[7] 12 C.F.R. § 1024.35(b)(2)

[8] *Id*. (b)(5)

[9] *Id*. (b)(7)

[10] *Id*. (b)(11); "In other words, an error is covered by the catch-all provision if it relates to or is connected with either (a) the loan servicer's receipt of payments from borrowers or (b) the loan servicer's making of payments to the loan's owners or third parties." *Naimoli v. Ocwen Loan Servicing, LLC,* 22 F.4th 376, 384 (2d Cir. 2022).

or (ii) that it had determined after a reasonable investigation that no error occurred. If SN determined that no error occurred, it must have provided to Plaintiffs a statement of the reason(s) for this determination, and a statement that Plaintiffs had the right to request documents relied upon by SN in reaching its determination, all of which SN failed to do. *Id.* § 1024.35(e).

Further, Plaintiffs have asserted actual damages as result of the violations including additional legal fees, incorrect information appearing on their credit reports, lost time and aggravation preparing challenges to the incorrect information on a credit report, additional charges such as late fees, court courts and attorney's fees being added to their account, the inability to refinance or reinstatement, if applicable, the threat of wrongful foreclosure and the emotional distress which would not exist but for its failure to correct. TAC ¶¶ 51 FN8-9, 52, 73-84,160; *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) (citing *Rodriguez v. Seterus, Inc.*, No. 15-61253-CIV, 2015 WL 5677182, at *2-3 (S.D. Fla. Sept. 28, 2015) ("photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a QWR are actionable under RESPA."); *Lindsay v. Rushmore Loan Mgmt.*, No. PWG-15-1031, 2016 WL 1169957, at *3 (D. Md. Mar. 25, 2016); *Benjamin v. Rosenberg & Assocs., LLC*, No. CV 19-3012 (RDM), 2021 WL 3784320, at *6 (D.D.C. Aug. 26, 2021) ("being subjected to attempts to collect debts not owed" is harm sufficient for standing purposes); *Magruder v. Cap. One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 14 (D.D.C. 2021) (same).

As such, Plaintiffs have plausibility alleged facts to state a claim that SN violated RESPA, and SN's motion to dismiss must be denied.

## IV.   CONCLUSION

WHEREFORE, for reasons stated above, Plaintiffs Jeffrey and Tonya Howes respectfully ask this Court to deny SN's motion to dismiss their RESPA claims under Count XII. In the alternative, Plaintiffs request leave to file an amended complaint to include any additional details.

Respectfully submitted,

Date: October 2, 2023

/s/ *F. Peter Silva II*
F. Peter Silva II (Bar # 19464)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
Fax: (202) 973-0950
psilva@tzlegal.com

*Counsel for Plaintiffs Jeffrey and Tonya Howes*

14

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 2, 2023, a copy of the foregoing document was filed and

served upon all parties via the Court's online CM/ECF filing system on all counsel of record.

/s/ *F. Peter Silva II*     
F. Peter Silva II, Esq.
