## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEFFREY V. HOWES, *et al.*, | |
| v. | Civil Action No. CCB-20-670 |
| SN SERVICING CORP., *et al.* | |

## MEMORANDUM

Now pending before the court is SN Servicing Corporation's ("SN") motion to dismiss Count XII of Jeffrey and Tonya Howes's ("the Howeses") third amended complaint. That count alleges that SN violated the Real Estate Settlement Practices Act ("RESPA") by failing to respond to letters the Howeses sent it regarding their construction loan that it was servicing. The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the following reasons, SN's motion will be denied.

## BACKGROUND

This history of this case and the underlying dispute have been chronicled in several prior opinions. *See, e.g.*, First Dismissal Mem., ECF 36; Second Dismissal Mem., ECF 96. Here, the court recounts only those facts relevant to Count XII.

In 2001, the Howeses executed a $696,130 construction loan. Second Dismissal Mem. at 1. In the decades that followed, ownership of and servicing responsibility for the loan have bounced between many parties. *Id.* at 2. Along the way, several bouts of litigation between interested parties and the Howeses have flared up, some of which have resolved and others of which have not. *Id.* at 3. This particular suit commenced when the Howeses filed a complaint in the Circuit Court for Howard County against the loan owners and servicers, including SN. *Id.* The defendants removed the case to this court, where the Howeses filed their first amended complaint.

First Am. Compl., ECF 8 ("FAC"). In relevant part, the FAC alleged that SN violated RESPA when it failed to adequately respond to letters the Howeses sent identifying perceived errors with their account. FAC ¶¶ 458-463. The Howeses also brought a nearly identical RESPA claim against another servicer defendant, FCI Lender Services ("FCI"). *Id.* ¶¶ 465-69.

The defendants filed motions to dismiss the Howeses' claims or for a more definite statement. The court denied SN's motion to dismiss the RESPA claim, reasoning that the Howeses had met their pleading burden on that issue. First Dismissal Mem. at 15-16. FCI did not move for dismissal of the RESPA claim against it. The court then granted the defendants' motions for a more definite statement under Federal Rule of Civil Procedure 12(e) and ordered the Howeses to file a second amended complaint clarifying their remaining claims. *Id.* at 17-18.

The Howeses filed their second amended complaint in December of 2021. Second Am. Compl., ECF 50. While a motion to dismiss that complaint was pending, the Maryland Supreme Court rendered a decision that changed the law governing several of the Howeses' previously dismissed claims. *See* Second Dismissal Mem. at 4-5 (citing *Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254 (Md. 2021)). The court accordingly granted a motion for reconsideration and permitted the Howeses to file another amended complaint.

The Howeses filed their third amended complaint on October 31, 2022, Third Am. Compl., ECF 77 ("TAC"), and the defendants moved to dismiss, *see* Second Dismissal Mem. at 5. SN did not move to dismiss the Howeses' RESPA claim against it, believing that the court's decision denying its prior motion to dismiss that claim barred relitigation of the issue. *See* Mot. to Dismiss Count XII at 4, ECF 100-1 ("Mot."). But FCI, which had yet to challenge the RESPA claim against it, did move for dismissal. And the court granted FCI's motion, reasoning that the Howeses'

allegations of FCI's violations of RESPA were "too conclusory" because they consisted of "bare assertion[s]" rather than specific facts. Second Dismissal Mem. at 9-10.

SN views the court's RESPA rulings as inconsistent. Mot. at 5. Because the Howeses' RESPA counts against SN and FCI employ nearly identical language, SN believes that "the Court's dismissal of the conclusory, non-specific RESPA allegations against FCI requires dismissal of the identical, conclusory, non-specific RESPA allegations against SN." *Id.* at 8. Because this theory arose after SN did not renew its motion to dismiss the Howeses' RESPA claim against it in the briefing on motions to dismiss the TAC, SN requested leave to file a renewed motion to dismiss, Status Report, ECF 98, and the court permitted it to do so, Letter Order, ECF 99.

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain factual allegations that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda*

*Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

Under RESPA, servicers of federally related mortgage loans have an obligation to respond to "qualified written requests" ("QWR") from borrowers. 12 U.S.C. § 2605(e); *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 412 (4th Cir. 2015). A QWR is a written notice from a borrower identifying the account and either notifying the servicer of a possible inaccuracy and explaining why the borrower believes the account is in error or describing other information sought by the borrower. *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 649 (4th Cir. 2022) (citing *Poindexter*, 792 F.3d at 413); 12 U.S.C. § 2605(e)(1)(B). Furthermore, to be a QWR, the communication must "relat[e] to the servicing of [the] loan," 12 U.S.C. § 2605(e)(1)(A), so communications focused on "the terms of the loan and mortgage documents" are not QWRs, *Poindexter*, 792 F.3d at 413-14 (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012)); *see Morgan*, 26 F.4th at 649, 650-51. After a covered servicer receives such a request, it must acknowledge receipt within five days. 12 U.S.C. § 2605(e)(1)(A). The servicer must then investigate the account and, within thirty days, make any appropriate corrections, explain the account's accuracy in writing, or provide information requested by the borrower. *See id.* § 2605(e)(2). A borrower may seek damages for a servicer's failure to comply with RESPA by alleging (1) the borrower submitted a qualified written request; (2) the servicer failed to perform its statutory duties upon receiving the request; and (3) actual damages. *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018).

In denying SN's initial motion to dismiss the Howeses' RESPA claim against it, the court reasoned that the Howeses had alleged that they sent QWRs, *see* First Dismissal Mem. at 16 (citing

FAC ¶ 460), that SN failed to respond to several QWRs and responded untimely and failed to correct errors identified in others, in violation of RESPA, *id.* (citing FAC ¶ 462), and that they suffered actual damages, including legal fees, late fees and other account charges, poor credit reports (and their downstream effects), and emotional distress, *id.* (citing FAC ¶ 463). This, the court concluded, was enough to state a RESPA claim.

SN argues that that ruling is inconsistent with the court's decision to grant FCI's motion to dismiss. In granting FCI's motion, the court reasoned that the Howeses had alleged that they sent FCI a QWR disputing the validity of their debt. Second Dismissal Mem. at 10 (citing TAC ¶ 74). FCI did respond to that correspondence, but the Howeses alleged, without additional detail, that FCI's response was incomplete. *Id.* (citing TAC ¶¶ 76, 165). As for harm, the Howeses' alleged the same injuries as with the RESPA claim against SN. *Id.* The court determined that these allegations were insufficient to state a claim. First, the court held that the Howeses' letter to FCI was not related to "servicing" because it merely "disput[ed] the debt." TAC ¶ 74; Second Dismissal Mem. at 10. Second, the court reasoned that, without any explanation as to *how* FCI's response, which allegedly included "a pile of documents," was unsatisfactory, the Howeses' allegations were too conclusory to state a claim. TAC ¶ 76; Second Dismissal Mem. at 10.

SN contends that the RESPA allegations against it and FCI are "identical," and that the court's dismissal of the FCI RESPA claim therefore compels dismissal of the SN RESPA claim. But, although the allegations in the TAC's *counts* are *nearly* identical, there are key differences between the allegations elsewhere in the TAC. The Howeses' letter to FCI "disput[ed] the debt," and only described errors supposedly created by SN. TAC ¶ 74. The Howeses' letters to SN, in contrast, both "disput[ed] the validity of the debt" *and* "not[ed] errors on the account . . . and request[ed] a full accounting and evidence of a right to collect." *Id.* ¶ 52. Further, the Howeses

admit that FCI responded to the sole letter they sent it, *id.* ¶ 76, and do not specifically dispute the response's timeliness, which appears to have been satisfactory allowing for mailing times, *compare id.* ¶ 74 (QWR sent August 15, 2018) *with id.* ¶ 76 (response sent September 27, 2018); *see* 12 U.S.C. § 2605(e)(2) (response required "[n]ot later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any [QWR]"). On the allegations, "SN failed to respond to five of the letters, and responded untimely and insufficiently to two letters" the Howeses sent it. *Id.* ¶ 52. The allegations, therefore, are not "identical," and the court's conclusion as to the FCI RESPA claim does not control the SN RESPA claim.

The Howeses have stated a RESPA claim against SN. First, the Howeses' letters were QWRs. As explained, to be a QWR, a written communication must identify issues with "servicing," such as "errors relating to allocation of payments, [and] final balances for purposes of paying off the loan, or avoiding foreclosure." *Morgan*, 26 F.4th at 649 (quoting 12 U.S.C. § 2605(k)(1)(C)). The Howeses' letters allegedly described "errors on the account," TAC ¶ 52, which included misapplication of reinstatement payments, *id.* ¶ 45, improper late fees, *id.* ¶ 46, missing refunds and failure to reinstate, *id.* ¶ 48, and more, *see id.* ¶ 49-51. Such errors directly relate to servicing and make the Howeses' letters QWRs.

Second, the Howeses allege that SN "failed to respond to five of the letters, and responded untimely and insufficiently to two letters." *Id.* ¶ 52. Servicers are statutorily required to respond to QWRs within thirty days, 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2), so the Howeses' allegations that SN failed to respond at all to five letters make out a violation of the statute. However, the Howeses allegations that SN "responded untimely and insufficiently to two letters," TAC ¶ 52, without any detail, are conclusory and fail to state a claim.

Finally, the Howeses allege actual damages. Although the costs of mailing a QWR, filing

a RESPA suit, and emotional damages divorced from pecuniary damages are generally insufficient

to establish actual damages, *see Akkus v. Rocket Mortg., LLC*, __ F. Supp. 3d __, 2024 WL 473733,

at \*6 (D. Md. 2024) (citing *Fox v. Statebridge Co.*, 629 F. Supp. 3d 300, 311 (D. Md. 2022)); *Fox*,

629 F. Supp. 3d at 311 (citing *Robinson v. Bank of Am., N.A.*, No. 21-cv-110-AJB-DEB, 2022 WL

837073, at \*7 (S.D. Cal. Mar. 21, 2022)); *see also Baez v. Specialized Loan Servicing, LLC*, 709

F. App'x 979, 982-84 (11th Cir. 2017); *Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 670-71

(10th Cir. 2018), some courts have found that "paying improper late fees or charges due to [the

servicer's] accounting errors and misrepresentations its agents allegedly made," when not

corrected in response to a QWR, can constitute actual damages, *Becker v. PennyMac Loan Servs.,*

*LLC*, 583 F. Supp. 3d 1090, 1100-01 (S.D. Ohio 2022); *see Hermann v. Wells Fargo Bank, N.A.*,

529 F. Supp. 3d 549, 561 (W.D. Va. 2021) ("When a plaintiff plausibly alleges that a servicer

violated its statutory obligations and as a result the plaintiff did not receive a refund of erroneous

charges, she has been cognizably harmed." (quoting *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d

1241, 1246 (11th Cir. 2016))); *but see Barker v. Quicken Loans, LLC,* 537 F. Supp. 3d 1058, 1062

& n.3 (D. Minn. 2021) (holding that fees imposed before a QWR are not causally related to the

servicer's failure to respond to the QWR, even when not corrected in response to the QWR).

Furthermore, when pecuniary damages have been adequately pled, emotional damages may be

recoverable on a RESPA claim. *Sharma v. Rushmore Loan Mgmt. Servs.*, 611 F. Supp. 3d 63, 85

(D. Md. 2020) (quoting *Robinson v. Nationstar Mortg. LLC*, No. 14-cv-3667-TDC, 2019 WL

4261696, at \*8 (D. Md. Sept. 9, 2019)). The Howeses allege damages including "legal fees[,] . . .

incorrect information appearing on a credit report, additional charges such as late fees, court [costs]

and attorney's fees being added to their account, the inability to refinance, or reinstate, if

applicable, the threat of wrongful foreclosure and . . . emotional distress." TAC ¶ 160. The

Howeses describe the amounts of several late fees and expense assessments that were allegedly

wrongfully charged and not corrected due to SN's failure to acknowledge and respond to the

QWRs. *See* TAC ¶¶ 46, 50, 51 (two $189.66 late fees, $2,923 in attorney's fees, and $908 in

foreclosure expenses). So although some of the damages alleged are insufficient, the Howeses'

allegations of improper and uncorrected charges are enough to state a claim.

**CONCLUSION**

For the above-stated reasons, SN's motion to dismiss Count XII will be denied. A separate

Order follows.

<table>
<tr><td>__7/10/2024__</td><td>_____/s/_____</td></tr>
<tr><td>Date</td><td>Catherine C. Blake<br>United States District Judge</td></tr>
</table>